Okay, will the council come forward, please, for the game check, please? Okay, the next argued case is number 14-16-20, Gametek LLC v. Zynga Inc. Mr. Edmonds. May it please the court? John Edmonds for the appellant Gametek. The 445 patent issue in this case is not directed to abstract ideas. This is directed to concrete and specific applications that comprise a program computer that affects many different steps. One is managing the operation of a computerized game. Another is controlling a user's gaming action. Another is presenting an offer to purchase a game object dependent upon parameters comprising the tracked activity of the user. That's specific – that's in Claim 1. That's also specific in Claims 15 and 17. Affecting a purchase, which is not just acquiring an object in the game. It's an actual purchase having a monetary nexus, as the claims were construed by the court, without interrupting the gaming action. In other words, the purchase is done in real time and then supplying the game objects without interrupting the gaming action. And I think something for the court to look to to try to have a good understanding of an embodiment of this invention is Figure 4a. In Figure 4a, what it shows is someone is playing an action game, and while they're playing that game, that game is like a shoot-'em-up game. While they're in the gaming action, they can hit Alt-A to replenish ammunition. They can hit Alt-R to get a rocket launcher. And in that case, the gaming action is uninterrupted for that purchase transaction, and those game objects are supplied again without interrupting the gaming action. Yes, you emphasize in your argument the fact that this is done without interruption. Is this the focus, in your view, of the – let's call it the inventive concept, as the Supreme Court likes to call these things, that it's done without interrupting the game? I don't believe so, and I think the Supreme Court has not been entirely clear on how you define an abstract idea. In most cases, the cases they've heard, they've said, well, it's economic relations, so it's an abstract idea. But I think that the things for the court to primarily focus upon would be that – and we laid out 12 steps for the court that we told the district court. You have to take all those steps into account when you're defining an abstract idea. I'd say the primary steps, if you want to try to reduce those to something less, would be you're managing the operation of a game. You're controlling the user's gaming action. You present the offer based upon tract activity. That's a significant limitation that needs to be – would need to be included with any statement of any abstract idea if the court determined there was – the claim was directed to an abstract idea. And then having a purchase and supplying the game object without interrupting gaming action. So I don't think you can ignore the controlling of the user's gaming action. Where is the controlling step in Claim 1 that you're referring to? The controlling step would be – I see a tracking activity of a user step. I don't see a controlling the user's game step. It's in the preamble. It says the program to control a gaming action of at least one of the plurality of users. Well, it says a method of managing the operation of a game, which includes a game environment and is programmed to control a gaming action for at least one of plurality of users, said managing method with the following steps. So isn't the gaming action that's being referred to in the preamble the purchase of some sort of object? No, it's the user's gaming action. As you look down in the steps of the claim, especially without interrupting, it's without interrupting the gaming action of the at least one user. But it – I'm sorry. Where are your – Steps – if you're looking at Claim 1, Step G, Step H, it's without interrupting the gaming action of the user. I don't have a Step H in my – Oh, I'm sorry. I'm looking at Claim 15. I apologize. So, right. So, Steps F and G, same steps. Permitting the at least one user to purchase the at least one game object without interrupting the gaming action. Right. It doesn't seem to me to be controlling the gaming action or programming the gaming action. It is creating an environment in which a purchase can be made that won't disturb what's otherwise going on over here. We don't read it that way. I mean, it's the gaming action of the at least one user here. Not controlling it. You want to effectuate a transaction without interrupting it. How is that controlling it, modifying it, affecting it? It seems to me you're simply not affecting it. That's exactly the precise language of the claim, right? Don't interrupt it. Don't get involved in that gaming action. Let it continue. Well, that's – the computer controls the entire game, and that's one thing that's different. You claimed – you didn't claim a computer controlling the whole game. You claimed a specific series of method steps, which begins with tracking activity. Not starting a game, but rather coming in in the middle of a game, quite frankly, because your first step is to track activity of a user in the course of the game, which is what your first step says. So you're not providing or claiming software running a game. Your step number one presupposes that the person is already in the middle of a game, and what you're claiming is selling them an object during that time. Well, we respectfully disagree. It says program to control a gaming action for at least one of the routing users. We think that language is clear, and we think it's limiting. And why do you think that preamble language isn't just a statement of purpose? Well, because gaming action – the gaming action is referred to in the claim is – later on is – that's the antecedent basis for it, and that's what's being controlled. I mean it's a method of managing the game. Do you need to amend the claim specifically to provide for the unknown interruption? Correct, right. So the computer is managing the game. The computer controls the game. The purchase is made without interruption. So you could be controlling the gaming action by allowing a change without interruption, but without otherwise affecting the play of the game. Well, in a computerized game, Your Honor – in a video game, in a computerized game, the computer ultimately controls everything that takes place. That's something different about computerized games and video games than games in the prior art. And to get this into the DDR Holdings case, which came out after this, but – which is highly relevant. But your claim wasn't limited to computer applications. It also included other things. We strongly disagree with that. The preamble talks about non-computer applications. These claims went through seven office actions over years, eight different iterations, and the claims are clearly limited to using a programmed computer to effectuate the steps. So the contention that non-computerized games form these claims is just simply incorrect, and that's focusing on unclaimed embodiments and specifications that were discarded long ago in the back-and-forth with the Patent Office and what resulted in these issued claims. And again, it gets us into the DDR case. And in the DDR case, the court talked about something that was necessarily rooted in computer technology to overcome a problem specifically arising with computers. Here you have a computerized game. In a computerized game, the computer controls the action of the game. The game automatically continues. In a game that you and I play in the prior art, in a real life, a non-computer game, the players control the action. The players can pause if they want. In this game, if I decide to get a rocket launcher, the game continues. My player might get killed. So if you look at figure four, as you can see, they can hit Alt-R to obtain a rocket launcher without any interruption. They're qualified for this because they have it in their account. The tracked activity matches up, and this purchase transaction with real consideration, with real money takes place without any interruption in real time. And that's just something – that's something that came along with computerized games where a computer is running everything. Even if a player decides to make a purchase, the game keeps going unless something happens here. In the prior art, the solution was we'll just pause the game, and you leave the game. That's the Raskowski prior art. That was the closest prior art. This game solves that problem of now we have computerized games. The game always goes. It's always continuing. It's being controlled by the computer. And it solves it by coming up with all these steps where you have a tracked activity limitation, where you have these accounts set up, and this is a seamless transaction where the game object is not only purchased for money, real money consideration, but it's also supplied in real time without interrupting the players – the gaming action of the player. That's something that came about with computerized games. It wasn't a problem before then, so it fits very well with the DDR case. It's rooted in computer technology. It came about with computerized games. Also, it's a problem unique to computerized gaming, just like it was in the DDR Holdings case. But it's certainly a computer-specific problem and not an economic problem, which certainly if we were addressing an economic problem, if this were economic relations, that would be somewhat of a different matter. Does the claim cover financial-type applications? Well, I don't think that every claim that involves some kind of financial transaction is itself an abstract idea. Is there a computerized trading program of some sort where, as you say, the computer is designed to make the trades, and then you can interrupt that while it's going on? If you change your mind, go in and – it seems to me to be a pretty clear application in computer trading of stocks and bonds. It may be the stocks and bonds, but again, this is a game. Stocks and bonds, I'm trading, you're trading. In the game, the computer is running the game. We don't want to interrupt the game because I could get killed while I'm trying to make the transaction. Well, the computer could be running the trading program too, where you could have a computerized program for purchasing power to run subways and utilities and that sort of thing. And then you could have a program to allow the changes in the running of that program without interruption. I'm just thinking about the range of applications that could apply here. That's not the abstract idea that was identified by the district court, which we claim was there. That's not – even if you try to reduce this claim to an abstract idea… I wasn't trying to formulate an abstract idea. I was trying to get a grasp on the reach of the patent. Well, the reach of the patent is… Where what you're talking about is gaining an advantage by being able to make a change while something is going on. Well, no. Something driven by a computer. Well, those are some aspects, but you've not mentioned that you're controlling the user's gaming action. You've not mentioned that you present the offer based upon parameters, including the tracked activity of the user. That's a significant limitation of this claim that just can't be ignored in trying to reduce it to some abstract idea. Or else it's insignificant pre-solution or post-solution activity, depending on how you look at it. We don't see it that way. It depends… No, you don't. But also, even when you say effectuating a purchase in real time, you're supplying a good within the game in real time too. That's something new and different. All those things need to be accounted for if you're going to try to distill some abstract idea from this. One problem with the district court's decision was it distilled – it said the abstract idea was the offer and sale of items to players in the course of gaming. That ignores the tracked activity limitation. It ignores that the purchase is done with real consideration without interrupting the gaming action of the user. It ignores that the game object is supplied without interrupting the gaming action of the user. And if you – when the district court distilled the claim down too far, then it made this erroneous conclusion. And that's really the primary basis of it. Also, the district court applied the wrong test. I mean the test – instead of talking about preemption, the court talked about meaningful space, and that was – the test is not meaningful space. The test is preemption. The district court also, we say, neglected to give adequate weight to these other – however, if you must define an abstract idea, then you have to look at these other steps and say, do they provide some inventive concept? This patent had a long prosecution history. It was novel over the prior art, the Ryszkowski prior art, and that inventiveness shouldn't be ignored in throwing this out as an abstract idea. At a minimum, even if you define it, there would be inventive steps. I'll save the rest of my time for rebuttal. Thank you, Your Honor. Okay. Thank you, Mr. Edmonds. Mr. Barsky. Good morning. May it please the court. Your Honors, this is not a boundary case. This doesn't test or even approach the limits of the Supreme Court's Section 101 jurisprudence in Alice and Mayo or this court's precedence in ultra-mercial contents extraction and the cases that have followed this decision in Alice. At its core, the claims here are directed to a teased out version of a buy-sell relationship. A game happens to be in the context of the playing of a game. What's abstract about playing a game under these conditions with the automatic movement of money, buy-sell, whatever, in the game context? Where is the abstraction? The abstraction here, Your Honor, is that the claims are directed to the formation of an economic relationship at its heart. And if we look at the steps, it is the creation of an account. It's a determination of the eligibility of a player to purchase a game object. It's setting the price of the game object. It is offering the object to the player. It is providing the object to the player during the course. Sounds pretty specific to me. It's abstract about it. You could say that these steps are known. You could say a lot of other things other than that they're abstractions. Well, it is not unlike the 12 steps here are not unlike the 11 steps in the Ultramershal case, which were also found to have at its core an abstract idea there. It was this notion of supplying copyrighted media in exchange for the display of advertisements. Here, as the district court found, and as we believe, the core abstract idea here is permitting game players to purchase game objects during a game. They know, and the Supreme Court has told us that just about every advance starts with a concept, an abstract concept, which then evolves. Yes, Your Honor. And so there's no question that there are these additional limitations that need to be tested as part of the second part of the Mayo framework under Section 101 when the court inquires as to what else is here. Is there something more? Is there some inventive concept that would transform these claims into patentable subject matter? And so here, the additional steps that we've heard about, such as the tracking of user activity and the supplying of a game object without interruption, certainly come into play in that second part of the Mayo analysis. And so I can turn to that, Your Honor, and address my comments to what I heard my friend say earlier about the significance of those two limitations in particular. Do you put any weight on the name of the patent and in the abstract, for purposes of deciding whether there's an abstract idea here? It's a method for obtaining advantages. Your Honor, there's no question that the specification here is very broad and that the… Right again, if you said, well, my claim is a method for gaining advantages in playing games, and that's your whole claim. Yes. Then wouldn't one think that that's an abstract notion? So here, yes. I mean, clearly, the summary of the invention, the abstract, the entire body of the specification are all directed to this very broad notion of the transaction of advantages in both a computing and a non-computing environment. The claims are directed to a… A computing environment. Well, the claims in… I guess I heard your adversary say the claims are directed to a computing environment relying on the preamble language, right? Yes, Your Honor, and… What's the answer to that? Are they correct? Well, I'll give a very lawyerly yes and no, because the district judge assumed for purposes of the court's decision below that the claims were limited to electronic games, to video games. We don't think the claims can be fairly read that way, but we're obviously here to defend the district court's… It's hard to program these days when it says something is programmed to do something or other. Isn't that reasonable to think that they're thinking about computers? Yes, absolutely, Your Honor. I'm distinguishing… It's like using a programmed computer. What do I do with that language in the preamble? I'm distinguishing, Your Honors, between the computer being used to effect the steps that are recited in the claim on the one hand, and the question of whether or not the game being played is a video game. Claim 1 does not specify that the game being played is any form of video or electronic game, and in fact, Claim 2, which depends from Claim 1, recites that the gaming environment is a video game, so by definition… Right, but I mean, so the claim limitations could refer to financial transactions, which wouldn't be a video game. Clearly. But it would be driven through a general purpose computer. Yes, if the steps are effected by… By a programmed computer. By a computer. So you give meaning to the words programmed computer in the preamble. Yes, assuming that the court decides that the reference to computer… Yes, or any type of game… That goes to the breadth of the patent. Yes, Your Honor. I don't think the average person thinks of stock market transactions as a game. Do you? Is that what you would call gaming action when you're trading on the stock market? No, and that's why I qualify my answer, Your Honor, to the extent that a transaction like that is considered a game. But there's no question that the claims here are directed to any form of off… At least the representative of Claim 1 is directed to any form of offline game without limitation, provided that it is… The steps that are recited here are effected. So you and I are playing poker, and how am I going to use the programmed computer to track our activity of the game while I'm simultaneously purchasing on the computer an object? Am I buying an ace? What am I buying? Because it's got to be an object related to the game. So if you and I are playing a board game, how am I performing these steps on a programmed computer in any sensible or logical way? I think your argument doesn't make any sense to me. I don't know why you're spending your time arguing it because you've got a lot of other good arguments. But if you want – if this is where you want to focus your effort, you've got me all in at this point. So you tell me. How is this actually going to work while you and I are playing poker or a board game of Monopoly or anything else? Am I buying boardwalk on the computer? Tell me. How does it work? Your Honor, I'm simply directing my comments to what is recited in the claim, and I'm… No, you are claiming that this claim reads on a non-computer-played game. Yes. But your distinction is that you acknowledge that a computer has to be used to perform these steps. Yes. And I'm saying nonsense. That makes no sense, and I can't imagine. I would like you to tell me how it could read on anything ever, how it could be operable to work while these steps are performed on a computer, and you and I are playing whatever game of your choice you would like to articulate as an example for me. It may not be a good example, but the way I read these claims, it could apply, for example… So you want to read the claims in a way in which you can come up with no example in which a scenario could ever give rise or implicate these claims. Your Honor, I'll give two examples if I could, but I really don't think – but I agree with your Honor that this is not the pivot point of our argument. And one is that we're now in the 80th year of the Parker Brothers board game monopoly. And presumably there is – someone could think of some clever way whereby players move around the board game and their activity is tracked on a… You could play it online. On an iPad or… No, he's saying the game – that's the whole premise of his claim construction argument. The game's not going to be played online. Similarly, your Honor, the specification gives examples of the sale of extra golf strokes during a charity golf tournament. And there are certainly, in my mind at least, the possibility that you could have a game referee tracking the activity of the players with an iPad on the fairway. And when the player hits a bad shot into the trees or into a water trap, that is entered into an iPad or some type of smartphone. And the computer, namely the phone or the tablet… Buy a mulligan. I'm sorry, Your Honor? Elect to buy a mulligan. It suggests offer a mulligan to the player, charge the player $3. Well, I have to say I'm impressed that you even came up with an example. So you did your research and you thought it through, and that's great. But that's clearly not what this patent is about. And that sort of example, even though the spec is extremely broad, has no place in this spec. I mean, this is – they limited this claim to a computer program. Yeah, well, I don't know then, Your Honor, what to do with claim – with depending claim 2, which specifically is directed to a video game. No, no, no. It's not limited to a video game. It's limited to a video game with certain background images and certain users and images. So it's not simply – you would be more correct, obviously, if it just said comprises a video game. Correct. Right? It has other limitations. Yes, Your Honor, but it does say that the game environment is a video game. And if the game environment of claim 1 was limited to video games, it would have been superfluous to specify that in claim 2. But let me move on, if I might, because this case is not – How is this different from DDR? The one thing you haven't said anything about is DDR, and your opponent was very happy when that decision came out and wanted to talk with us about it, which I think makes total sense. So how does this case separate itself in a meaningful way from DDR? Judge Moore, in DDR, the applicant solved a problem that was specific to the internet, namely the problem of a website luring away traffic when the user goes through the very normal function of clicking a hyperlink and the user is then transported from a host website to a third-party website. And what the Federal Circuit said in DDR and made so clear was that the solution in that case involved overriding the normal functioning of, in effect, the internet, or at least the normal functioning of the sequence of events that occurs when a user presses a mouse click or otherwise selects a hyperlink. And so the solution there was rooted in a technological change to the way that the internet normally works. Here, there is no such solution, no technological solution, to any technological problem. Why not? Why isn't the technological solution here allowing the game to continue playing while breaking off a new screen, much like DDR created a new website, a new window opens up that allows you to make this purchase? Why isn't the case that prior to this patent, those sorts of purchases can't be made without interrupting and stopping gameplay, which is part of what the prior art in the prosecution was about? So why isn't this actually a technological solution in the form of we have programmed this in a manner that allows for opening up a new window while simultaneously continuing gameplay? If in fact, Your Honor, there was some disclosure of a technological solution that permitted that kind of activity, then this case would be closer to DDR. But in fact, the only reason that limitation is in the claims at all is because it was cited by the examiner as prior art, Raczkowski prior art. I guess I don't understand. What is it that you think should be disclosed? Is it code? What is it that's missing? Because you said if this had disclosed that technological solution, you think it would be a harder case for you. So what is it precisely? It's code? Because there's no code in the DDR patent. Go back and look at it. There's no code disclosed in that patent, yet the court went ahead and found that articulating a program that would create and open up a separate webpage was enough without articulating the code. And isn't that kind of parallel to what they have here? No, Your Honor, respectfully. And the reason why is this. First, it was not the case that until Mr. Cartwright came along, it was impossible for a game player to acquire a technological, impossible for a game player to acquire a game object without interrupting the game. Mr. Cartwright did not invent technology that permitted that to happen the same way the inventor in DDR came up with an actual way of overriding the normal functioning of a mouse click and included technology in his patent to do so. Is your argument – I'm trying to make sure I understand. Is your argument that this patent doesn't tell you how to let gameplay continue while you make this purchase? It just has the lofty goal of that happening, but it isn't – it's not like it articulates for you the mechanics of how a computer game will continue to play in the background without interrupting. That's part of it, Your Honor. It is more that there was never any technological problem before Mr. Cartwright came along that prevented a game object from being provided without interruption and there was no technological solution and is no technological solution in the 445 patent that overcomes that in the way that an obstacle was actually overcome in DDR. And my recollection, Your Honor, because I did look at the DDR patent is that there is actually code in there. I'm not certain whether it is code that relates to this specific aspect. I've got to go back and look. That's actually something I didn't know. I thought it only had algorithm type stuff. I didn't know it had actually code. I seem to recall remembering just a short passage of code in a right-hand column, but I could be wrong about that. In any event, Your Honor, what is so clearly missing here is any contribution to the technological arts or to technology that permitted the players here to do something. So with the luxury, I hope, of the presiding judge, because I know I've made you go over your time by a lot, but sum up for me, because what I'm struggling with, and I have a lot of 101 cases on my docket right now, and in every one of them I've got the patentee saying DDR, DDR, DDR. Synthesize for me what you think is the defining line or characteristic or principle of DDR. Tell me – I mean, that's just why it doesn't apply in this case. I guess what I'm looking for is help to try to weed through lots and lots of cases where people are saying, but look, here's one that came out in favor of us. Yes, yes. So how would you say that I ought to think of DDR in terms of what it stands for? Thank you, Your Honor. I'm happy to do that. I think what DDR stands for is that where there is some technological problem that requires a technological innovation or advance to overcome that problem and to thereby enable the claimed invention to be practiced, that is one of the lines that I see DDR as drawing. The claims here, by contrast, did not overcome some technological problem. It was an exercise in draftsmanship that resulted in the tracking limitation, which, by the way, this court has seen before in the Alice case, in the Planet Bingo case, in Bancorp, and the limitation directed to without interruption. The only reason those claim terms are in this patent is because it was added to overcome a prior art rejection. And we know from Mayo and Ultramershal that novelty is not enough to satisfy the Section 101 standard. So I know I'm over my time. Okay. Thank you. Thank you, Your Honor. Thank you, Mr. Barsky. And let's see, Mr. Edmonds, we'll enlarge our rebuttal time since we've run over.  So I think the first issue that was raised during the argument was defining the abstract idea. And I think that, Your Honor, you raised it correctly. If you said the abstract idea is obtaining an advantage, that's one thing, but that's not what these claims are about. These claims are much more specific than that, and I think that's where the district court in the first instance just simply erred in defining an abstract idea that failed to look at the claim as a whole, as Mayo requires, and that failed to take into account real limitations in the claim that would have to be incorporated into a statement of any abstract idea. I know that Ultramershal 1 is no longer good law, but I still think that the statement in Ultramershal 1 that you could take any claim and overgeneralize it, and if you go hunting for an abstract idea and you might find one, illustrates what happened here. By any estimation, the abstract idea that was identified by the district court is way overly broad, and that led him down an incorrect path here. As far as there was a question about stock transactions, I think Judge Moore got it right. I just don't think – I mean this is about games. It's about gaming. It's just – it's not about trading stock, and I think it goes way too far to try to compare a gaming patent to something else that's in the financial services industry. It's all games. Golf, hockey, all games. No, it's – no, because the claims we would submit are unambiguously limited to having a programmed computer effect those steps, and that doesn't happen with golf or hockey, no. So it wouldn't apply. I mean if you – you could maybe use hindsight and come up with an electronic golf game that you could try to fit within the claims. But as far as if you're talking about golf as it exists in the prior art, no, that doesn't fall under these claims at all. It wouldn't. It's not a – it's not performed by a computer. None of the steps here would be applicable. I mean… I'm pretty sure computerized golf games predate your patent. Don't you think so? Very well they may. I mean – but the thing is, though, if the computerized golf game involved attract activity limitation, if it involved purchases without interrupting gaming action, if it involved supplying game odds without interrupting the gaming action… … then that would be a different matter, and they could raise that as a 102 or 103, but that hasn't been – that's not the issue here before the court. Again, I think it takes hindsight to try to pigeonhole prior art games. There's really no evidence in the record. I mean even with the mulligan that was mentioned, a golf swing is not a game object. Even the mulligan that was described would involve interrupting the game. I think what was the very first question that you were asked is, isn't the inventive concept here making a sale of an object without interruption of the game? How would you describe the inventive concept? Because that's what got you over the prior art during prosecution was the without interruption language. Well, I'd say the totality of the claim is what got over the prior art. So you added that language. It was rejected. So no, the totality of the claim didn't get you over prior art. The totality of the claim with the without interruption language got you over the prior art. Totality of the claim with the interruption language, I would agree. I mean I think if you – like I think I already said this. If you're going to try to reduce it, you could say that it is managing the operation of a game, controlling the user's gaming action. Okay, but see I don't agree with you that any of those are limitations in this claim. So what else you got? Okay, presenting offers to purchase a game object dependent on parameters comprising the tracked activity to users. But there was nothing novelty, novel about offering users the ability to purchase objects. That's why all of that language was there before, and the claim was rejected during prosecution. There's nothing inventive about allowing people to purchase something during a game. Heck, that goes back to the days of Monopoly. You purchase BoardWalk, you purchase Park Place, whatever. So the novelty, at least through prosecution, didn't seem to exhibit itself in the form of purchasing something during a game. No, the tracked activity limitation was added during prosecution to get over prior art too. I mean I think you – I don't see how you can just say that the last claim amendment is all we can look at in terms of defining an abstraction. I think you have to look at the meaningful limitations of the claim. But I'm trying to understand what the inventive concept or the inventive concepts, plural, are in this claim. And until you added the without interruption language, this claim was consistently rejected. You didn't overcome those rejections. Well, until we added it – I mean you can overcome an objection whether you agree with the examiner or not. But what I would say is you have to look at the totality of the claim. You'd have to include the tracked activity limitation. You'd have to include the control by – of the gaming action by the computer. You'd have to include the purchase, a real purchase, not just acquiring something, but a purchase takes place without interrupting, and that the game object is supplied without interrupting gaming action. If you try to reduce it to any abstract idea with less than those core elements, then we submit that would be error. And again, I would circle back to Figure 4 because there was a statement that there's nothing inventive here. You look at Figure 4, there's nothing like it in the prior art. There's nothing like it in conventional gameplay. That just didn't exist. That – Figure 4 came about because of a problem that was presented by electronic games. What is it that Figure 4 specifically shows? Well, Figure 4 is an embodiment that shows that I'm – the user is in the midst of an action game, so it's a shoot-em-up game. In other words, I'm shooting at them. They're shooting at me. To reload, I can hit Alt-A to get ammunition. It doesn't interrupt my shooting because I can use my other hand to do the Alt-A. Or if I want to get a rocket launcher because I'm against a really tough opponent, then I can hit Alt-R and arm myself with a rocket launcher again without any interruption in the gameplay. As you can see at the bottom of the screen, it shows the account, which means that there's a determination here that I have enough money to purchase the rocket launcher. And I can make that purchase seamless without interrupting the gaming action. The rocket launcher is supplied – it's one of these games with your weapons out in front of you. It's supplied without interrupting the gaming action. That just simply did not exist. So it's basically the purchase of the advantage without interruption of the game. That is – well, it was based upon track activity, or it wouldn't have been offered. And the – it's without interrupting. The purchase was without interrupting. And the supplying of the game object was without interrupting. All those things have to be considered. All those things contribute to the novelty of the claim. Okay, I think we need to move on. Are there any more questions? Are there any more questions? Okay. Thank you, Arnie. Thank you, guys. We appreciate the advice and your submission. Thank you both.